ANDRÉ BIROTTE JR.
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
ROBERT E. DUGDALE
Chief, Violent and Organized Crime Section
Assistant United States Attorney
California Bar Number:   167358
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4685
    Facsimile: (213) 894-3713
    E-mail: robert.dugdale@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 09-1004-MMM |
| Plaintiff, | ) <u>PLEA AGREEMENT FOR DEFENDANT</u> <u>PAUL CHALLENDER</u> |
| v. | ) |
| PAUL CHALLENDER,<br>   aka "Hilljoe," | ) |
| Defendant. | ) |

    1.  This constitutes the plea agreement between defendant Paul Challender, also known as "Hilljoe" ("defendant"), and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

<u>PLEA</u>

    2.  Defendant agrees to plead guilty to count two of the indictment in <u>United States v. Paul Challender, et al.</u>, CR No. 09-1004-MMM.

1

<u>NATURE OF THE OFFENSE</u>

2   3.   In order for defendant to be guilty of the crime charged

3   in count two of the indictment, which charges a violation of

4   Title 18, United States Code, Section 2252A(a), (b)(1), (b)(2)

5   (conspiracy to transport, receive, distribute, and possess child

6   pornography), the following must be true:

7   a.   There was an agreement between at least two

8   persons to commit at least one crime charged in the indictment,

9   in this case, an agreement to transport, receive, distribute, and

10   possess child pornography;

11   b.   Defendant became a member of the conspiracy

12   knowing of at least one of its objects and intending to

13   accomplish it; and

14   c.   One of the members of the conspiracy performed at

15   least one overt act for the purpose of carrying out the

16   conspiracy.

17   The crimes that defendant agrees that he conspired to

18   commit, as charged in court two of the indictment, are (1) the

19   transportation of child pornography; (2) the receipt and

20   distribution of child pornography; and (3) the possession of

21   child pornography.

22   In order for a defendant to be guilty of transporting child

23   pornography, the following must be true:

24   a.   The defendant knowingly transported visual

25   depictions of minors engaged in sexually explicit conduct;

26   b.   Each visual depiction showed minors engaged in

27   sexually explicit conduct;

28   c.   The production of such visual depictions involved

the use of a minor engaged in sexually explicit conduct;

        d.    Defendant knew that such visual depictions showed minors engaged in sexually explicit conduct; and

        e.    Defendant knew that production of such visual depictions involved use of a minor engaged in sexually explicit conduct.

In order for a defendant to be guilty of the receipt or distribution of child pornography, the following must be true:

        a.    Defendant knowingly received or distributed matters which the defendant knew contained visual depictions of minors engaged in sexually explicit conduct;

        b.    Defendant knew each visual depiction contained in the matters showed minors engaged in sexually explicit conduct;

        c.    Defendant knew that production of such visual depictions involved use of a minor in sexually explicit conduct; and

        d.    Each visual depiction had been mailed, shipped, or transported in interstate or foreign commerce by computer.

Lastly, in order for a defendant to be guilty of possessing child pornography, the following must be true:

        a.    Defendant knowingly possessed matters which the defendant knew contained visual depictions of minors engaged in sexually explicit conduct;

        b.    Defendant knew each visual depiction contained in the matters showed minors engaged in sexually explicit conduct;

        c.    Defendant knew that production of such visual depictions involved use of a minor in sexually explicit conduct; and

1          d.    Each visual depiction had been either (a)

2   mailed, shipped, or transported in interstate or foreign commerce

3   by computer, or (b) produced using material that had been mailed,

4   shipped, or transported in interstate or foreign commerce by

5   computer.

6                           <u>PENALTIES</u>

7       4.    The statutory maximum sentence that the Court can

8   impose in this instance for a violation of Title 18, United

9   States Code, Section 2252A(a), (b)(1), (b)(2) involving a

10  conspiracy to transport, receive, distribute, or possess child

11  pornography is:  20 years' imprisonment; a lifetime period of

12  supervised release; a fine of $250,000 or twice the gross gain or

13  gross loss resulting from the offense, whichever is greatest; and

14  a mandatory special assessment of $100.

15      5.    The statutory mandatory minimum sentence that the

16  Court must impose for the violation of Title 18, United States

17  Code, Section 2252A(a), (b)(1), (b)(2) to which defendant is

18  pleading is five years' imprisonment and a five year term of

19  supervised release.

20      6.    Supervised release is a period of time following

21  imprisonment during which defendant will be subject to various

22  restrictions and requirements.  Defendant understands that if

23  defendant violates one or more of the conditions of any

24  supervised release imposed, defendant may be returned to prison

25  for all or part of the term of supervised release, which could

26  result in defendant serving a total term of imprisonment greater

27  than the statutory maximum stated above.

28      7.    Defendant also understands that, by pleading guilty,

                              4

defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

8.    Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.    Defendant further understands that as a condition of supervised release, under 18 U.S.C. § 3583(d) defendant will be required to comply with the requirements of the Sex Offender Registration and Notification Act. Defendant understands that if he resides in California, he will be subject to the registration requirements of California Penal Code Section 290.

<u>FACTUAL BASIS</u>

10.    Defendant and the USAO agree and stipulate to the statement of facts attached to this agreement at Exhibit A.  This statement of facts includes facts sufficient to support the plea of guilty to the charge described in this agreement and to establish the sentencing guideline factors set forth in paragraph 14 below.  It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

11.    By pleading guilty, defendant gives up the following

5

rights:

        a)    The right to persist in a plea of not guilty.

        b)    The right to a speedy and public trial by jury.

        c)    The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial.  (In this regard, defendant understands that, despite his or her plea of guilty, he or she retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

        d)    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

        e)    The right to confront and cross-examine witnesses against defendant.

        f)    The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

        g)    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF DNA TESTING

12.   Defendant has been advised that the government has in its possession items of physical evidence that could be subjected to DNA testing.  Defendant understands that the government does not intend to conduct DNA testing of any of these items. Defendant understands that, before entering guilty pleas pursuant to this agreement, defendant could request DNA testing of evidence in this case.  Defendant further understands that, with respect to the offenses to which defendant is pleading guilty pursuant to this agreement, defendant would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600.  Knowing and understanding defendant's right to request DNA testing, defendant knowingly and voluntarily gives up that right with respect to any items of evidence there may be in this case that might be amenable to DNA testing.  Defendant understands and acknowledges that by giving up this right, defendant is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type.  Defendant further understands and acknowledges that by giving up this right, defendant will never have another opportunity to have the evidence in this case submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offenses to which defendant is pleading guilty.

## SENTENCING FACTORS

13.   Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or

1  "Sentencing Guidelines") among other factors in determining

2  defendant's sentence.  Defendant understands that the Sentencing

3  Guidelines are only advisory, and that after considering the

4  Sentencing Guidelines, the Court may be free to exercise its

5  discretion to impose any reasonable sentence up to the maximum

6  set by statute for the crimes of conviction.

7      14.  Defendant and the USAO agree and stipulate to the

8  following applicable sentencing guideline factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | __22__ | [U.S.S.G. § 2G2.2(a)(2)] |
| Adjustments | | | |
| Offense involved material that depicted minors under the age of 12 | : | __+2__ | [U.S.S.G. § 2G2.2(b)(2)] |
| Offense involved material that portrays sadistic or masochistic conduct | : | __+4__ | [U.S.S.G. § 2G2.2(b)(4)] |
| Offense involved the use of a computer | : | __+2__ | [U.S.S.G. § 2G2.2(b)(6)] |

19  Defendant and the USAO reserve the right to argue that

20  additional specific offense characteristics, adjustments and

21  departures are appropriate.  Defendant understands at the time of

22  sentencing that the government will argue that the enhancements

23  set forth U.S.S.G. §§ 2G2.2(b)(3)(B) and 2G2.2(b)(7)(D) apply to

24  this case.  Defendant also understands that defendant's base

25  offense level could be increased if defendant is a career

26  offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  In the event that

27  defendant's offense level is so altered, the parties are not

28  bound by the base offense level stipulated to above.

15.   There is no agreement as to defendant's criminal history or criminal history category.

16.   The stipulations in this agreement do not bind either the United States Probation Office or the Court.  Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 14 are consistent with the facts of this case.

<u>DEFENDANT'S OBLIGATIONS</u>

17.   Defendant agrees that he will:

        a)   Plead guilty as set forth in this agreement.

        b)   Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

        c)   Not knowingly and willfully fail to: (I) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

        d)   Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

        e)   Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

        f)   Pay the applicable special assessments at or

before the time of sentencing unless defendant lacks the ability
to pay.

THE USAO'S OBLIGATIONS

18.  If defendant complies fully with all defendant's
obligations under this agreement, the USAO agrees:

a)   To abide by all sentencing stipulations contained
in this agreement.

b)   At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offenses up
to and including the time of sentencing, to recommend a two-level
reduction in the applicable sentencing guideline offense level,
pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary,
move for an additional one-level reduction if available under
that section.

c)   At the time of sentencing to move to dismiss the
remaining count of the indictment as against defendant.
Defendant agrees, however, that at the time of sentencing the
Court may consider the dismissed count in determining the
applicable Sentencing Guidelines range, where the sentence should
fall within that range, and the propriety and extent of any
departure from that range.

d)   Notwithstanding the sentencing range yielded
by an application of the United States Sentencing Guidelines to
this case, the USAO agrees that it will recommend a sentence in
this case of no longer than 151 months.

BREACH OF AGREEMENT

19.  If defendant, at any time after the execution of this
agreement, knowingly violates or fails to perform any of

10

defendant's agreements or obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  If the USAO declares this agreement breached at any time following its execution, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all of its obligations under this agreement.

20.  Following the Court's finding of a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a)   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b)   Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c)   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the stipulated factual basis statement in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any such prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410

1  of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules
2  of Criminal Procedure, or any other federal rule, that the
3  statements or any evidence derived from any statements should be
4  suppressed or are inadmissible.

5                   LIMITED MUTUAL WAIVER OF APPEAL
6       21.  Defendant gives up the right to appeal any sentence
7  imposed by the Court, and the manner in which the sentence is
8  determined, provided that (a) the sentence is within the
9  statutory maximum specified above and is constitutional, (b) the
10 Court in determining the applicable guideline range for count two
11 does not depart upward in offense level or criminal history
12 category and determines that the total offense level is 37 or
13 below, and (c) the Court imposes a sentence within or below the
14 range corresponding to the determined total offense level and
15 criminal history category.  Defendant also gives up any right to
16 bring a post-conviction collateral attack on the conviction or
17 sentence, except a post-conviction collateral attack based on a
18 claim of ineffective assistance of counsel, a claim of newly
19 discovered evidence, or an explicitly retroactive change in the
20 applicable Sentencing Guidelines, sentencing statutes, or
21 statutes of conviction.  Notwithstanding the foregoing, defendant
22 retains the ability to appeal the court's determination of
23 defendant's criminal history category.  In addition,
24 notwithstanding the foregoing, defendant retains any ability
25 defendant has to appeal the conditions of supervised release
26 imposed by the Court, with the exception of the following:
27            a.   The imposition of a term of supervised release of
28 up to 10 years with the conditions set forth below;

1         b.   Conditions set forth in General Orders 318, 01-05,

2    and/or 05-02 of this Court;

3         c.   The defendant shall use only those computers and

4    computer-related devices, screen user names, passwords, email

5    accounts, and internet service providers (ISPs), as approved by

6    the Probation Officer.  Computers and computer-related devices

7    include, but are not limited to, personal computers, personal

8    data assistants (PDAs), internet appliances, electronic games,

9    and cellular telephones, as well as their peripheral equipment,

10   that can access, or can be modified to access, the internet,

11   electronic bulletin boards, and other computers, or similar

12   media;

13        d.   All computers, computer-related devices, and their

14   peripheral equipment, used by the defendant, shall be subject to

15   search and seizure and the installation of search and/or

16   monitoring software and/or hardware, including unannounced

17   seizure for the purpose of search.  The defendant shall not add,

18   remove, upgrade, update, reinstall, repair, or otherwise modify

19   the hardware or software on the computers, computer-related

20   devices, or their peripheral equipment, nor shall he/she hide or

21   encrypt files or data without prior approval of the Probation

22   Officer.  Further, the defendant shall provide all billing

23   records, including telephone, cable, internet, satellite, and the

24   like, as requested by the Probation Officer;

25        e.   The defendant shall register with the state sex

26   offender registration agency in any state where the defendant

27   resides, is employed, carries on a vocation, or is a student, as

28   directed by the Probation Officer.  The defendant shall provide

proof of registration to the Probation Officer within 72 hours of release from imprisonment/placement on probation;

f.    The defendant shall participate in a psychological counseling and/or psychiatric treatment, which may include inpatient treatment, as approved and directed by the Probation Officer and the Court.  The defendant shall abide by all rules, requirements, and conditions of such program.  The Probation Officer shall disclose the presentence report and/or any previous mental health evaluations or reports to the treatment provider;

g.    The defendant shall not possess any materials, including pictures, photographs, books, writings, drawings, videos, or video games, depicting and/or describing "sexually explicit conduct," as defined at 18 U.S.C. § 2256(2).  The condition prohibiting defendant from possessing materials describing "sexually explicit conduct" does not apply to materials necessary to and used for legal proceedings in this or another criminal prosecution against defendant, including a collateral attack or appeal, or to materials prepared or used for the purposes of defendant's court-mandated sex offender treatment;

h.    The defendant shall not possess any materials, including pictures, photographs, books, writings, drawings, videos, or video games, depicting and/or describing child pornography, as defined in 18 U.S.C. § 2256(8).  The condition prohibiting defendant from possessing materials describing child pornography does not apply to materials necessary to and used for legal proceedings in this or another criminal prosecution against defendant, including a collateral attack or appeal, or to

materials prepared or used for the purposes of defendant's
court-mandated sex offender treatment;

   i. The defendant shall not own, use or have access to
the services of any commercial mail-receiving agency, nor shall
he/she open or maintain a post office box, without the prior
approval of the Probation Officer;

   j. The defendant shall not frequent, or loiter,
within 100 feet of school yards, parks, public swimming pools,
playgrounds, youth centers, video arcade facilities, or other
places primarily used by persons under the age of 18;

   k. The defendant shall not associate or have verbal,
written, telephonic, or electronic communication with any person
under the age of 18, except: (a) in the presence of the parent or
legal guardian of said minor; and (b) on the condition that the
defendant notify said parent or legal guardian of his/her
conviction in the instant offense/prior offense.  This provision
does not encompass persons under the age of 18, such as waiters,
cashiers, ticket vendors, etc., with whom the defendant must deal
with in order to obtain ordinary and usual commercial services;

   l. The defendant shall not affiliate with, own,
control, volunteer and/or be employed in any capacity by a
business and/or organization that causes him/her to regularly
contact persons under the age of 18 without the permission of the
United States Probation Office;

   m. The defendant shall not affiliate with, own,
control, and/or be employed in any capacity by a business whose
principal product is the production and/or selling of materials
depicting and/or describing "sexually explicit conduct," as

defined at 18 U.S.C. § 2256(2);

n.    The defendant's employment shall be approved by the Probation Officer, and any change in employment must be pre-approved by the Probation Officer.  The defendant shall submit the name and address of the proposed employer to the Probation Officer at least 10 days prior to any scheduled change; and

o.    The defendant shall not reside within direct view of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or other places primarily used by persons under the age of 18.  The defendant's residence shall be approved by the Probation Officer, and any change in residence must be pre-approved by the Probation Officer.  The defendant shall submit the address of the proposed residence to the Probation Officer at least 10 days prior to any scheduled move.

22.    The USAO gives up its right to appeal the sentence, provided that (a) the sentence is within the statutory minimum and maximum specified above and is constitutional, and (b) the Court imposes a sentence within or above the range corresponding to a total offense level of 37, and the applicable criminal history category as determined by the Court.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

23.    Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction,

with both the USAO and defendant being released from all of their
obligations under this agreement, or (c) leave defendant's
remaining conviction, sentence, and plea agreement intact.
Defendant agrees that the choice among these three options rests
in the exclusive discretion of the USAO.

## COURT NOT A PARTY

24.  The Court is not a party to this agreement and need not
accept any of the USAO's sentencing recommendations or the
parties' stipulations.  Even if the Court ignores any sentencing
recommendation, finds facts or reaches conclusions different from
any stipulation, and/or imposes any sentence up to the maximum
established by statute, defendant cannot, for that reason,
withdraw defendant's guilty plea, and defendant will remain bound
to fulfill all defendant's obligations under this agreement.  No
one -- not the prosecutor, defendant's attorney, or the Court --
can make a binding prediction or promise regarding the sentence
defendant will receive, except that it will be within the
statutory maximum.

## NO ADDITIONAL AGREEMENTS

25.  Except as set forth herein, there are no promises,
understandings or agreements between the USAO and defendant or
defendant's counsel.  Nor may any additional agreement,
understanding or condition be entered into unless in a writing
signed by all parties or on the record in court.

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2        26.  The parties agree and stipulate that this Agreement

3    will be considered part of the record of defendant's guilty plea

4    hearing as if the entire Agreement had been read into the record

5    of the proceeding.

6        This agreement is effective upon signature by defendant and

7    an Assistant United States Attorney, and it will automatically

8    expire if not executed by defendant prior to 5:00 p.m. on April

9    15, 2010.

10   AGREED AND ACCEPTED

11

12   UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA

13   ANDRÉ BIROTTE JR.
     Acting United States Attorney

14

15                                              4|15|10
     _____      _____
16   ROBERT E. DUGDALE                  Date
     Assistant United States Attorney
     Chief, Violent and Organized
17   Crime Section

18       I have read this agreement and carefully discussed every

19   part of it with my attorney.  I understand the terms of this

20   agreement, and I voluntarily agree to those terms.  My attorney

21   has advised me of my rights, of possible defenses, of the

22   Sentencing Guideline provisions, and of the consequences of

23   entering into this agreement.  No promises or inducements have

24   been made to me other than those contained in this agreement.  No

25

26

27

28

one has threatened or forced me in any way to enter into this
agreement.  Finally, I am satisfied with the representation of my
attorney in this matter.


PAUL CHALLENDER                           04/14/10
Defendant                                 Date


     I am Paul Challender's attorney.  I have carefully discussed
every part of this agreement with my client.  Further, I have
fully advised my client of his rights, of possible defenses, of
the Sentencing Guidelines' provisions, and of the consequences of
entering into this agreement.  To my knowledge, my client's
decision to enter into this agreement is an informed and
voluntary one.


CARLOS JUAREZ                             4-14-10
Counsel for Defendant                     Date
Paul Challender

<u>EXHIBIT A</u>

"Quest4More" was an Internet-based, members-only message board, hosted by IBPFree.com, a message board hosting site, located in Los Angeles, California, that allowed Internet users to set up free message boards using its site.  The main purpose of the Quest4More message board was to provide a forum for its members to transport, receive, distribute, and possess child pornography and to discuss topics related to the sexual exploitation of children.  The Quest4More message board was divided into a number of different fora that included posts of thousands of images and videos of child pornography separated into different categories, including a forum dedicated to child pornography featuring infants.  Members of the Quest4More message board – who were "vetted" to ensure that they did not pose a risk to the board or its members – were allowed to make "posts" to the Quest4More message board, which included, among other things, the postings of child pornography images and videos, postings of links to child pornography images and videos, postings that commented on child pornography posted by other members, and "private" posts between one member of the bulletin board to another.

Defendant Challender became a member of the Quest4More bulletin board on or about June 18, 2007, and, beginning on that date, Challender conspired with the other members of the Quest4More bulletin board, including the members of the bulletin board utilizing the screen names "Yah1," Mayan2012," "jaslovesfootball," "Yukon_jock," and "DanDlion," among others, to transport, distribute, receive, and possess child pornography through use of the bulletin board.  In this regard, defendant Challender, using the screen name "hilljoe," entered more than 280 public posts to other Quest4More message board users, including posts in which he (1) transported and distributed child pornography over the bulletin board to the other members of the Quest4More message board; and (2) commented on child pornography that he had received over the Quest4More bulletin board and that had been posted by other Quest4More members.

By means of example only, on or about August 19, 2008, Quest4More member, defendant William Ho, utilizing the screen name "Mayan2012," posted a message on the Quest4More bulletin board titled "Here's some yummy ones!"  Under this title, defendant Ho posted images of toddlers and prepubescent girls bound and gagged; an image of a toddler, with her legs spread, who was pictured with a man inserting his finger into her naked vagina; and an image of an infant with an adult male penis near her face and semen near her mouth.  Two days later, defendant Challender, confirming that he had received and possessed these images of child pornography posted by defendant Ho, posted a message in response to this posting stating, "Great, never too young to be raped."

In this vein, defendant Challender posted child pornography images and videos on the Quest4More message board during the time period he was a member and, in return, Challender received and

possessed child pornography images and videos that were posted by other members of this message board.  Defendant Challender was aware that these child pornography images and videos that he conspired to transport, distribute, receive, and possess with the other members of the Quest4More bulletin board included images and videos of actual children.  Finally, the child pornography images and videos that defendant Challender and the other Quest4More members transported, distributed, received, and possessed as a result of their participation on the message board traveled in interstate and foreign commerce, as the members of the Quest4More message board who transported, distributed, received, and possessed the child pornography posted on the message board were scattered throughout a number of different states and countries.