**Carlos L. Juárez, Esq.**                                    **SBN 86196**
**Law Office of Juárez & Vega**
**306 West 2nd Street, Suite 300**
**San Bernardino, CA 92401**
**Phone:   (909) 889-0485**
**Fax:      (909) 384-0952**
**E-Mail:   juarezvegalaw@yahoo.com**

Attorney for Defendant, Paul Challender

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| **United States of America**, | Case No.: ED CR 09-01004-MMM-1 |
| Plaintiff, | DEFENDANT PAUL CHALLENDER POSITION RE: SENTENCING FACTORS |
| vs. | Date: March 21, 2011 |
| **Paul Challender**, | Time: 1:15 P.M. |
| Defendant | Approximate Duration: 30 minutes |

Defendant Paul Challender, through his attorney of record, Carlos L. Juarez, hereby submits his Position re: Sentencing and Objections to the Presentence Report (PSR).

As set forth in the accompanying Memorandum of Points and Authorities, Mr. Challender objects to the PSR's calculation of a total offense level of 39 and sentence recommendation of a 240 month period of incarceration.  Challender further prays that the Court will sentence him to a reasonable and just sentence of 70 months incarceration, reflective of a variance under 3553.

1

Accordingly, the Court should impose a sentence of 70 months imprisonment to be followed by a term of lifetime supervised release the terms and conditions as set forth in the United States Probation Office's (USPO) sentencing recommendation letter, a mandatory special assessment of $100.00, and the Court should find that all fines be waived as Mr. Challender lacks the present ability, and will likely lack any reasonable ability in the foreseeable future, to pay any fine.

Respectfully submitted,

Dated February 28, 2011                    LAW OFFICES OF JUAREZ & VEGA
                                           *By: Carlos L. Juarez (electronically signed)*
                                           Carlos L. Juarez
                                           Attorney for Defendant
                                           PAUL CHALLENDER

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The fundamental issue before the Court is the PSR's Specific Offense Characteristic and applicable guidelines U.S.S.G. 2G2.2(b)(3)(B) and 3A1.1(b)(1) to increase Challenders' total offense level to 42. Pursuant to the plea agreement the parties stipulate to certain enhancements. Based solely on the enhancements to which the parties agreed, the total offense level would be 27 which has a corresponding sentencing range of 70 to 87 months. The parties stipulated in the plea agreement to a maximum term of imprisonment of 151 months.

As such, Challender asks for a reasonable and just sentence of 70 months incarceration. This sentence is not greater than necessary in this case to achieve the goals of sentencing and is a variance under 3553 factors. The Court should order that all fines be waived in this case, for the defendant is unable to pay any fines at present and will most likely lack the ability to pay any fines in the foreseeable future.

## II.    FACTUAL BACKGROUND

On September 30, 2009 the defendant was charged in a five count indictment, along with four other defendants with violations related to Child Exploitation Enterprise, Conspiracy to Advertise, Transport, Receive, Distribute, Solicit, and Possess Child Pornography, and Possession of Child Pornography. Challender has been in federal custody since his arrest on October 2, 2009.

On June 23, 2010, pursuant to a written plea agreement, Challender pleaded guilty to the conspiracy charge under Count Two, admitting that he and the other defendants conspired and

agreed with each other to knowingly and intentionally transport, receive, distribute, advertise, solicit and possess child pornography.

Under the terms of the plea agreement signed on April 14, 2010 the parties agreed to a base offense level of 22, pursuant to U.S.S.G 2G2.2(a)(2); a two-level increase based on the age of the victims, pursuant to U.S.S.G 2G2.2(b)(2); a four level increase as the material portrayed sadistic or masochistic conduct under U.S.S.G 2G2.2(b)(4); and a two level increase for use of a computer, pursuant to U.S.S.G 2G2.2(b)(6). At the time of sentencing, the government has further agreed to move to dismiss the remaining count of the Indictment. The parties reserved the right to argue specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

There was no agreement as to Challenders' criminal history and Challender is subject to the imposition of a term of supervised release of up to 10 years and will be required to comply with the requirements of the Sex Offender Registration and Notification Act.

The USPO filed their PSR on October 29, 2010 wherein they tallied their recommendation as follows:

| | |
|---|---|
| U.S.S.G. 2G2.2 base offense level | 22 |
| U.S.S.G. 2G2.2(b)(2) | +2 |
| U.S.S.G. 2G2.2(b)(3) | +5 |
| U.S.S.G. 2G2.2(b)(4) | +4 |
| U.S.S.G. 2G2.2(b)(6) | +2 |
| U.S.S.G. 2G2.2(b)(7)(D) | +5 |
| U.S.S.G. 3A1.1(b)(1) | +2 |
| Adjusted offense level | 42 |
| Acceptance of Responsibility under U.S.S.G 3E1.1(a)/3E1.1(b) | -3 |

Total Offense Level                    39

The USPO further noted that Challender lacks a criminal history and is therefore in category I. The PSR recommends the statutory maximum of 240 months followed by a lifetime period of supervised release.

### III.   SENTENCING POSITION

Defendant Challender asks the Court to consider the following objections and arguments:

In crafting the appropriate sentence for Mr. Challender the Court must focus on the mandate of the sentencing statutes provision to impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing. See ***Kimbrough v. United States***, 552 U.S. 85, 101, 128 S. Ct. 558, 169 L.Ed. 2d 481 (2007). While the determination of the correct advisory guideline range is the first step in the Courts analysis, this Guideline determination is but one of several statutory factors the Court must consider. See 18 §U.S.C. 3553 (a). Any variation from the advisory Guidelines must be explained by reference to the mandatory statutory factors the Court must consider. See ***Nelson v. United States***, 129 S. Ct. 890, 891-92 (2009).

In crafting the reasonable sentence, the Court must balance the punitive, deterrent, protective and rehabilitative purpose underlying sentencing-all with the goal to imposing the least sentence that achieves these ends.

**<u>Defendant Objects to Various Sentencing Enhancements found in U.S.S.G. 2G2.2 because they overstate the seriousness of the offense.</u>**

As stated in ***United States v. Booker***, 543 U.S. 220, 245, 269 (2005), sentencing courts are no longer bound to apply the Guidelines but are to take them into account when sentencing.

In *Kimbrough* the Court held that it was not an abuse of discretion for a district court to conclude that the guidelines treatment of crack cocaine generally yields a "greater sentence than necessary" to achieve the goals of 3553(a). The same is true for the child pornography enhancement of U.S.S.G. 2G2.2.

Courts have issued below guideline sentences in child pornography cases in light of *Kimbrough*. Further, Courts have also stated that child pornography guidelines are inflated and lack empirical support, thus overstating the seriousness of the offense. In *United States v. Vanvliet*, 542 F.3d 259 (1st Cir. 2008) a sentence was vacated in an interstate travel case, in light of *Kimbrough*, where the district court believed it could not impose below guideline sentence based on its policy disagreement with the computer enhancement.

In *United States. v. Grossman*, 513 F.3d 592 (6th Cir. 2008) the Courts affirmed the reduction from 120 months to 66 months based on the district judges assessment that the range was "not reflective of what Grossman did"; the Court noted that as the 135-168 month range was higher than statutory maximum, this evidenced that the guidelines overstated the offense. In *United States v. Parish*, 308 F.3d 1025 (9th Cir.2002) the Court held that a sentence below the guideline sentencing range for possession of child pornography was permissible because it was "pretty minor" according to an expert witness, and had been automatically downloaded to the defendant's computer, and it had not been indexed.

**(A)** **The Distribution Enhancement under U.S.S.G. 2G2.2(b)(3)(B) Should not apply**

The defense objects to the application of the enhancement for distribution in expectation of a thing of value pursuant to U.S.S.G. 2G2.2(b)(3)(B). The enhancement requires a transaction conducted for a thing of value, rather, "including bartering or other in kind transaction."

6

The fact of the matter is that Challender did not trade goods or services in his membership in Quest4More. Nor was continual involvement in this site subject to Challender providing any type of child pornography to potential or new members. Furthermore, Quest4more did not have a specific criteria established to filter potential members by requiring any form of child pornography to be presented by the potential member to existing members or site managers.

It is quite frequent and not unusual for child pornography boards and sites to have explicit rules requiring a certain level of posting for membership. See ***United States v. Groenendal*** 557 F.3d 419, 421 (6th Cir. 2009) (describing board that required individuals to post two pictures in order to gain membership). In this case, Challender did not post any child pornography on this particular website and his involvement is that of observer and casual commentary of the child pornography posted by other more active members. It was not necessary for Challender to post images to receive access to the boards and his involvement was not contingent on his ability to provide other members with child pornography.

As such Challender argues that the 5 level enhancement for distribution for a thing of value should not apply. In ***United States v. Bastian***, 603 F.3d 460, 467 (8th Circuit. 2010) one concurring judge noted that " if a file-sharing program allows the user to download child pornography from other computers, whether or not the user makes his own images available to other parties, then the user's distribution is gratuitous. It is not for the receipt of a thing of value, because it is unnecessary to the receipt of a thing of value."

In this case Challender himself attempted to post links from his commentary to no avail. Challender had no child pornography to share with Quest4more members and typically played the part of commentator to the other child pornography posted by more active and culpable

members of this site. The distribution of child pornography was not a condition or requirement of membership to Quest4more. Distribution was not an expectation of a thing of value as Challender was allowed to continue to frequent and scour the board and remain a member, irrespective of him posting any child pornography for other members. Those who elected to post child pornography received no extra benefit for their distribution, they were not afforded access to more, private and salacious child pornography, and their distribution was gratuitous.

Challenders' involvement in Quest4more was as an individual trying to gain acceptance and stature with other members by commenting on their actual postings of child pornography. Defense counsel has filtered through the discovery and concluded that Challender posted 137, as opposed to 280 posts to other members.  In the few attempts that Challender tried to post images, he failed in his 13 attempts, as his links were inaccessible and met with dissatisfaction by members trying to view the links.

The method in which Quest4more operated its board discussion allowed Challender the opportunity to frequent the board postings without having to actually provide child pornography. This was not a board just for posting of child pornography but appeared to be one where members could discuss issues like security, preferences and commentary, like Challender did. Challender in fact had many communications with members of Quest4more irrespective of his ability to provide these members with child pornography himself.

**(B)   The Vulnerable Victim Enhancement under U.S.S.G 3A1.1(b)(1) Should not Apply**

The probation office recommended this enhancement as Challender apparently viewed an image depicting a toddler with her legs spread and a man inserting his finger into her vagina. This enhancement does not apply to his possession of child pornography case because it only applies where the victim was unusually vulnerable due to the defendants' criminal conduct.

8

Under §3A1.1 "vulnerable victim" is a person who is a victim of the offense of conviction and any conduct for which the defendant is accountable under Relevant Conduct; and also who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct. Therefore it is imperative to identify the victim of the offense and the harm caused by the offense.

In *United States v. Blinkinsop*, 606 F.3d 1110 (9th Cir. 2010) this Court recently explained that minors depicted in child pornography are victims in a possession of child pornography case because of the harm caused after the initial production of the images. As such, the harm caused by possessing child pornography is not the same as the harm caused by producing child pornography. The harm caused by possession is the psychological effect on the victim due to her knowledge that others have seen the image of her being abused.

As such, no possession of child pornography victim is more or less vulnerable than another. The actual harm does not materialize until the victim reaches the age where they understand and conceptualize to understand that a image or photo of themselves exist and has been distributed and appreciate the consequences of its existence and distribution. Without argument is the fact that the victims in this child pornography were vulnerable to the conduct of the actual abuser and molester that physically perpetuated the offense upon her and photographed it. But there needs to be a distinction between Challenders' act of viewing the image and the actual physical perpetrator of the offense.

The vulnerable victim enhancement is inapplicable and further demonstrated by the passage of time between the creation of the actual child pornography image and Challenders' actual viewing. Under *United States v. Jordan*, 256 F.3d 922, 927-28 (9th Cir. 2001) the government has the burden to prove the facts necessary to support an enhancement by

preponderance of the evidence. The government did not prove the status of the victims in the offense. If the victim was no longer alive or was unaware of the existence of the images of herself, or the fact that they were distributed, then logically she could not have suffered the continuing harm caused but its possession. Blinkinsop, 606 F.3d at 1118, let alone be unusually vulnerable to such harm.

The probation office uses *United States v. Holt*, 510 F. 3d 1007 (9th Cir. 2007) to support the vulnerable victim enhancement in this case, paragraph 28. There, the Court upheld such an enhancement imposed on a defendant convicted of possessing child pornography. Holt, however, only asserted a "double-counting" argument. The Ninth Circuit never considered in Holt anything like the arguments made by Mr. Challender.

### **The Nature and Characteristics of the Offense and History and Characteristics of the Defendant**

Section 3553(a)(1) is a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant." *Gall v. United States*, 552 U.S. 38, 50 n. 6, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007).

### **The Nature and Characteristics of the Offense**

In May 2008, Challender provided an ICE special agent who had taken over the identity of a cooperating child exploitation defendant with the user name and pass code to a child website entitled Quest4more. This allowed the agent to access the board and view child pornography, post messages, and share stories with others with similar interests. The investigation determined that Quest4more was being used by members to transport, receive, distribute, and possess child pornography and to discuss topics related to the sexual exploitation of children.

10

On September 22, 2009 a federal search warrant was executed at the residence of Challender in Big Rapids, Michigan. During this search Challender was cooperative and remorseful and cooperated with the authorities for his illegal and illicit doings. Challender further provided the investigating authorities with any and all information that was requested. He further consented to a search of his personal vehicle and provided the agents with his email address and internet provider.

On October 27, 2009 Challender gave a proffered interview to RAC Grand Rapids to assist in their investigation of websites quest4more and multiply.com which was being investigated by ASAC Pittsburgh. In this proffer, Challender provided the authorities with information regarding a Canadian man that had solicited Challenders' assistance in abducting and raping a child in either Michigan or Canada. Challender further provided the agents with a list of other people he has traded child pornography with and access to his Yahoo account with his password and other identifying information.

To say that Challender has been cooperative would be an understatement as he, knowing of his right to counsel, waived his 5th Amendment protection and willfully and openly discussed his involvement in this offense. Challender also freely stated that he had been trying to stop viewing child pornography but cannot and needs assistance.

Challenders' involvement in this offense is that of commentator and observer of child pornography on the Quest4more message board. While other members posted and distributed child pornography, Challender commented on their postings and links. Challender himself made 137 posts and unsuccessfully attempted to provide links on 13 different occasions. His involvement is best characterized as being a member who made a series of post replies and commentary yet never provided or distributed child pornography to his expecting board

members. Challender frequently referred to fellow board members as friends and acquaintances yet the same friendly gestures and greetings were reciprocated.

### **History and Characteristics of the Defendant's Childhood**

Paul Leon Challender was born in 1956 into a life of poverty, abuse, and turmoil. From birth to age nine he grew upon on a rural farm without running water and the basic necessities we often take for granted. Food was scarce, times were tough, but most importantly, Challender was left to fend for himself without the assurance and emotional and physical protection provided by most parents for their children.

Challenders' father was an alcoholic who physically and emotionally abused his mother, even pointing a gun at her on an occasion. "It would be almost too kind to say that Paul came from a dysfunctional home. Our parents divorced when Paul was around seven. Our father drank heavily, stayed late in the bars every night, was stern and abusive to our Mother, teasing and verbally assaulting her endlessly in front of all of his children. Their marriage was essentially over by the time Paul was born. Also, Paul was born sickly due to our mothers' anemia. He was very pale, slow to develop, and all his baby teeth rotted out before he was five. Our dad had little use for a son that was frail and weak. I don't know his true feelings of course but Dad never gave Paul the least bit of attention, no fatherly guidance or love." **(Attachment "A", Letter from Ernest and Lenora Challender)**

Challender had a childhood that was extremely poor. "He stated that they had no indoor plumbing or bathroom as the water came from a well. He had poor nutrition as he was growing up. He noted as he was in school in the second grade it was learned he needed glasses but was unable to obtain the glasses until one year later." **(Attachment "B", Dr. Suiter Pyschological Assessment)** As a consequence, Challender was a subject to teasing from his classmates for

wearing second hand clothing and barely being able to see while trying to learn the fundamentals of reading and writing in elementary school.

Furthermore, as evidenced by Judy Engelsmen, Challender's second to the oldest sister, "they don't have sports at the school near the farm and only three teachers and one cook; there's no principal. There are no movies theaters, no playgrounds and no skating. They only have one swing that they share amongst themselves. They also jump into large piles of hay to entertain themselves. As a child, Paul suffers from health complications and is anemic. Paul is too sick to go outside, he is malnourished and none of them ate well unless their grandparents fed them. Paul has a very dysfunctional childhood." **(Attachment "E", Interview of Judy Engelsmen)**

Challenders' childhood was characterized by neglect and he recalls raising himself, getting his meals, and getting himself off to school. Money was scarce and his family did not eat well. The family received public assistance. (PSR, Page 10) While Challenders' four siblings have all fared well enough to move past their turmoil and poverty, Challender has had to further face the abuse that for so long has haunted him throughout his life.

**<u>Sexual Abuse</u>**

Challender became a victim of sexual abuse at the tender age of four as his mother was too caught up in her own prescription pill addiction to protect her son from his pedophile uncle. "Challenders' mother was addicted to pain killers and had mental health issues, suffering from depression. "(PSR, page 10) Specific to his difficult childhood there was an uncle who had lived in his home that had been deemed a pedophile. "He had some vague memory of his uncle touching him sexually and stated he was aware his uncle was asked to leave the home which he believes was due to some questions about his sexual behavior with children in the home." **(Suiter, page 2)**

Challender was left unprotected in his household and was subject to inappropriate and sexual encounters with members of his immediate family. "In addition, he described having a strange aunt who would visit intermittently and when she did, typically when he was approximately six until approximately eight years of age, she would have him sleep with her." **(Suiter, page 2)**

Challender attempted to move pass this horrible time in his life and without counseling or therapy, did his best to live a normal and fruitful life while in high school. Challender suffered from a speech impediment while in school and was often teased for stuttering. Challender experienced difficulties in absorbing curriculum and only finished the tenth grade of high school.

**Community Involvement/Work History**

At the age of eighteen Challender wanted to serve his country and enlisted in the U.S. Army but once again, came up short in the success department and failed to meet the physical demands of the military. He was then employed as a dietary aid at a hospital for four years where he enjoyed assisting people in need and earning confidence and building self esteem along the way. Challender then worked as a janitor for the next year until he found his niche, working the next 30 years as a factory worker. "He never missed work and always paid his bills and he was employed at the factory for over 30 years. He was the Union Local Treasurer and President of the Mecosta County Democrats for 20 years." **(Attachment "C", Letter from Mary Challender Smith)**

Challender was committed to his place of employment and for the first time in his life, took a certain degree of pride in his work accomplishments and commitment. His interests also involved politics and he was able to balance both interest well, according to his domestic partner of 27 years.  "Paul has worked at Big Rapids Tools for the past thirty years. He's up at 5:00 a.m.

14

and immediately turns on C-SPAN to listen to political issues on the news. He leaves the house

by 6:00 a.m. and on his way to work, stops to pick up a couple newspapers. Paul is very active

with the Union from work and his ideas and thoughts are well respected." **(Attachment "F",**

**Interview of Mark Bolek)**

       Throughout his 30 years of employment, Challender had completed many courses

through the United Auto Workers (UAW) Family Education Center including collective

bargaining, grievance handling, civil rights, and employee assistance programs. Satisfaction for

Challender came from helping people and servicing his community with an extra time that he

had.

       Challender has always been active in community service as he felt that service for others

helped give him a sense of worth, satisfaction, and belonging. "As a Union Auto Workers union

member he served on various committees, helping the membership out, and serving as union

steward. Challender volunteered for a Community Action Program and was an office manager

for various political campaigns." (PSR, page 10)

       Challender then decided to become involved in pursuing political aspirations as he ran for

the State House of Representatives in both 2000 and 2002. Challender is very active in the

Democratic Party and was Chairman of the Mecosta County Democratic Party. He also helped

manage the local campaign office for President Barack Obama during the Presidential election.

       Furthermore, Challender befriended people during his activity whom hold him in high

regards and speak very highly of him. "Paul would visit for dinner. Pamela and Paul would

participate in parades with children and also the children would come by the democratic office

during the presidential election. Paul was never inappropriate and was very professional. He was

good with employees and had a big heart. We were also part of Blue Tiger, which works in

conjunction with the Democratic Party to provide community projects to help the low income people in Michigan."**(Attachment "G", Interview of Pamela Fleming)**

Aside from politics Challender has volunteered thousands of hours of his time in book drives for veterans, adopt a road programs, woman's shelter fundraising drives and various community programs and services. "I am proud of Paul in many ways. He worked hard and diligently at the same job for nearly 30 years, supporting himself well. He purchased his own home, he voted regularly, participated in local and state politics and always maintained a good vehicle. He was a tax paying asset to the Big Rapids, Michigan community." **(Attachment "A", Letter from Ernest and Lenora Challender, page 3)**

1. <u>**Punishment and Deterrence**</u>

A sentence of 72 months will serve as a deterrent and sufficient punishment for Mr. Challender. Challender has no previous criminal history and is subject to a lengthy term of imprisonment. The Court should not discount the fact that Challender will be subject to lifelong supervision for this instant offense. As such, the likelihood for recidivism is low.

"I know what I did was wrong and I will never commit this or any other crime again. I want to reenter society and contribute to the common good once more when I am released. Perhaps I can help others avoid what I have not only put myself through, but those I love." **(Attachment "D", Letter from Paul Challender)**

Challender is extremely remorseful for the activities that he has involved himself in and has come to grip with the pain and damage he has caused his community and innocent lives damaged by his conduct." Mr. Challender related he is certainly aware that his actions involved children who were victims as they had no control over what was happening to them. He stated he

16

has had a great deal of time to consider and contemplate his actions for which he now feels considerable remorse and regret."(**Dr. Suiter, p. 5**)

Further, as noted in the PSR Recommendation Letter, page 5,     "Challender continues to enjoy the support of his two sisters, and plans to live with one of them following his release; this bodes well for the future and may help to reduce the risk of recidivism."

## 2.  Education and Training

Challender is fully aware and remorseful for his actions and wishes the Court will assist him in providing therapy and counseling for his psychological issues related to this offense. "Mr. Challender does have some insight that he needs long-term therapy with a person who is well versed in conducting such therapy for individuals with this type of Paraphilia. It is this examiners opinion the prognosis of Mr. Challender towards being able to resolve his attraction to children is favorable given he has the appropriate therapy." (**Suiter, page 7**) Challender asks the Court to provide him with the opportunity to receive treatment the Federal Correctional Institution (FCI) in Marianna, Florida, which is a medium security facility housing male inmates. There he will be able to participate in the Sex Offender Management Program, whose purpose it is to decrease criminal recidivism of sex offenders through effective risk appraisal, as well as other programs FCI Marianna offers to help Challender deal with his past sexual, emotional, and physical abuse.

Challender is also hopeful that he will obtain the assistance in the Bureau of Prisons 500 hour Substance Abuse Programs that cater to alcohol abuse candidates like himself.

## 3.  Disparity in Sentencing

Co defendant Michael Pharris, a man with a prior federal child pornography charge and other miscellaneous no touching offenses stretching back over 20 years, was sentenced to 15

17

years on December 20, 2010. Pharris plead guilty to Count two of the indictment as did Challender.

A period of incarceration of 70 months is a reasonable and just sentence. Anything above this sentence would create an unwarranted sentencing disparity that is not justified by the offense conduct in this case. Courts throughout the country have sentenced defendants to less than the guideline range as they have deemed the sentencing guidelines as draconian.

### IV.    Conclusion

Defendant Challender has admitted responsibility for his actions and now asks the Court for a reasonable and just sentence of 70 months incarceration, taking into account all the facts and arguments stated in this Sentencing Memorandum and those included in the PSR.

Challender realizes that he is in dire need of therapy and psychological counseling for his conduct and as well as assistance in overcoming his substance abuse issues. As such, Challender respectfully asks the Court to place him at FCI Marianna, Florida as well as placement in the BOP's 500 hour Residential Substance Abuse Program.

Respectfully Submitted,


Dated February 28, 2011                    LAW OFFICES OF JUAREZ & VEGA
                                           *By: Carlos L. Juarez (electronically signed)*
                                           Carlos L. Juarez
                                           Attorney for Defendant
                                           PAUL CHALLENDER

18