ANDRÉ BIROTTE JR
United States Attorney
ROBERT E. DUGDALE (California State Bar No. 167258)
Assistant United States Attorney
Chief, Criminal Division
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-4685
     Facsimile:  (213) 894-3713
     e-mail:   robert.dugdale@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>PAUL CHALLENDER,<br><br>          Defendant. | No. CR 09-1004-MMM<br><br>GOVERNMENT'S RESPONSE TO THE SENTENCING POSITION PAPER FILED ON BEHALF OF DEFENDANT PAUL CHALLENDER<br><br>Sentencing date:   3/21/11<br>Time:              1:15 p.m.<br><br>[Courtroom of the Honorable Margaret M. Morrow] |

**TABLE OF CONTENTS**

|   |   |   | **PAGE** |
|---|---|---|---|
| TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . ii |
| I. | INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . 1 |
| II. | ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 |
|   | A. | CHALLENDER'S OBJECTION TO THE APPLICATION OF THE DISTRIBUTION ENHANCEMENT RELIED UPON BY THE PROBATION OFFICE AND THE GOVERNMENT TO CALCULATE HIS SENTENCING GUIDELINE RANGE IS WITHOUT MERIT . . . . . 5 |
|   |   | 1. | When Challender Entered His Guilty Plea, He Admitted the Very Conduct That Triggers The Distribution Enhancement Recommended By the Probation Office and the Government . . . . . . 6 |
|   |   | 2. | Challender's Posts on the Quest4More Board, and the Responses to His Posts, Confirm that Challender Successfully Distributed Child Pornography, Including Child Pornography Featuring Infants, to the Other Members of the Quest4More Board . . . . . . . . . . . . . . . . . . . . . 7 |
|   | B. | CHALLENDER'S OTHER CRITICISMS CONCERNING THE APPLICATION OF THE SENTENCING GUIDELINES HAVE NO MERIT . . . . . . . . . . . . . . . . . . . . . . 10 |
|   | C. | THE ARGUMENTS CHALLENDER OFFERS TO MITIGATE HIS HORRIFIC CONDUCT AND IN SUPPORT OF LENIENCY AT SENTENCING DO NOT JUSTIFY A SENTENCE NEAR THE MINIMUM SENTENCE HE FACES IN THIS CASE OR, FOR THAT MATTER, ANY SENTENCE OF LESS THAN 151 MONTHS . . . . . . . . . 11 |
| III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 17 |

**TABLE OF AUTHORITIES**

**FEDERAL CASES:**                                                               **PAGE(S)**

<u>United States v. Bastian</u>,
        603 F.3d 460 (8th Cir. 2010) . . . . . . . . . . . . . .   10

<u>United States v. Cunningham</u>,
        680 F. Supp. 2d 844 (N.D. Ohio 2010) . . . . . . . . .   11

<u>United States v. Endicott</u>,
        803 F.2d 506 (9th Cir. 1986) . . . . . . . . . . . . .   15

<u>United States v. Laney</u>,
        189 F.3d 954 (9th Cir. 1999) . . . . . . . . . . . . .    5

<u>United States v. Monroe</u>,
        943 F.2d 1007 (9th Cir. 1991) . . . . . . . . . . . .   15

<u>United States v. Saeteurn</u>,
        504 F.3d 1175 (9th Cir. 2007) . . . . . . . . . . . .   16

**STATE CASES:**

<u>United States v. Big Leggins</u>,
        2009 WL 605185 (9th Cir. 2009) . . . . . . . . . . . .   16

<u>United States v. Phillips</u>,
        2009 WL 1185217 (9th Cir. 2009) . . . . . . . . . . . .    5

**STATUTES:**

18 U.S.C. § 3553(a)(6)  . . . . . . . . . . . . . . . . .   15, 16

**SENTENCING GUIDELINES:**

U.S.S.G. § 2G2  . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 10

I.

INTRODUCTION

This case stems from defendant Paul Challender's involvement as a valued member of Quest4More, an Internet Bulletin Board that served as a forum for Challender and others to post child pornography and receive child pornography in return from the Board's other members. As the postings to this Board confirm, the Board attracted a group whose vile interests focused on collecting, posting, and masturbating to the most graphic images imaginable of children being sexually abused, as well as posting lewd comments in response to such images that gleefully promoted the idea of taking pleasure in the pain inflicted on extremely young children who were the subject of sexual torture.

Challender was one of the most active and, frankly despicable, participants of this Board. As a member of this Board, Challender was involved in at least the following activity:

* Challender made at least 289 posts to this Board (totaling over 10 percent of all of the posts to the Board), including posts in which he discussed his strong interest in "nepi" (child pornography images featuring infants and toddlers), the enjoyment he derived from watching children in pain as a result of being sexually tortured, and fantasies he had about raping toddlers;

* Challender posted links to child pornography to the Board, including links to images that featured infants. These posts were not only accessed by the other members of Quest4More; they drew praise from the other pedophiles who populated the

Board and who supplied Challender with child pornography on numerous occasions at his request; and

    *   Challender also participated in the recruitment of others to join the Board and share their child pornography with him and the other members, as evident by his successful effort to lure an undercover ICE agent into joining the Board at a time when Challender obviously believed the agent was a like-minded person with an interest in sharing child pornography.

    As a result of Challender's appalling conduct in this case -- which also included amassing his own collection of hundreds and images and hundreds of movies featuring shockingly repulsive images of child pornography at his home in Michigan -- the Probation Office has recommended that defendant be sentenced to 20 years imprisonment to be followed by a lifetime of supervised release.

    In its Sentencing Position Paper, filed February 28, 2011, the government concurred, with one minor variance, with the Sentencing Guidelines calculations reached by the Probation Office in its Presentence Report ("PSR"), but it recommended that the Court impose the following sentence: (1) a below-guidelines term of 151 months imprisonment; (2) a lifetime period of supervised release; and (3) payment of a $100 special assessment.

    That same day, Challender filed his sentencing position paper, arguing that (1) the Presentence Report ("PSR") incorrectly applied a five-level upward enhancement to his Sentencing Guideline range, pursuant to U.S.S.G. § 2G2.(b)(3)(B), because he purportedly did not distribute child pornography on the Quest4More at all, and thus did not distribute child

pornography with an expectation that he would receive child pornography in return for doing so;[1] (2) the Sentencing Guidelines overstate the seriousness of his offense; and (3) a jumbled of purportedly mitigating facts justify the imposition of sentence near the minimum sentence Challender faces as a result of his crime of conviction.[2]  Each of these claims is without merit.

As explained in detail below, when Challender entered his guilty plea in this case, he admitted to those facts necessary to trigger the distribution enhancement that he now claims should not apply to his case.  Moreover, Challender's purported reasons why he should not receive this enhancement relating to the distribution and receipt of child pornography are based on completely inaccurate assertions relating to his criminal conduct

---

[1] Challender also contests the application of the "vulnerable victim" enhancement to his Sentencing Guidelines range, pursuant to U.S.S.G. § 3A1.1(b)(1).  As the government indicated in its initial sentencing brief, it is not seeking the application of that enhancement in this case.  However, the government believes -- and the evidence overwhelmingly shows -- that Challender should receive a five level increase to his Sentencing Guideline range to account for the number of child pornography images and videos that Challender possessed both as a member of the Quest4More group and at his residence on the day he was arrested.  See U.S.S.G. § 2G2.2(b)(7).  Challender fails to account for this enhancement at all in his analysis and does not and cannot properly object to its applicability in his case.  Accordingly, the Sentencing Guideline range advocated by Challender in his Sentencing Position Paper is at least five levels lower than where it plainly should be.

[2] Challender faces a 60 month mandatory-minimum sentence in this case in light of pleading to his involvement in the receipt and distribution of child pornography.  At various points in his sentencing position paper, he argues that he should receive a sentence of either 70 or 72 months.

in this case, namely, his claims (a) that he never successfully posted child pornography to the Quest4Board and merely served as a "commentator" on the Board; and (b) that did not have child pornography he could trade with customers of the Quest4More site. In fact, Challender posted links to child pornography, including images of infants, that his depraved colleagues acknowledged the receipt of through their posts to the Board.  Indeed, Challender's postings in this regard once garnered a remark from defendant Michael Pharis that Challender's postings featured children that were even "a little to [sic] young for [his] taste."[3]  Moreover, there is no truth to the claim that Challender did not have child pornography in his possession that he could share with the other members of the Quest4More Board. As noted in the PSR, Challender was found in the possession of a computer on the day of his arrest that contained hundreds of images and hundred of movies featuring child pornography, including images of infants, toddlers, and preteens being sexually tortured, as well as children's clothing and diapers that Challender stated that he was using as a sexual aid. (PSR ¶¶ 16, 19).

Furthermore, the mitigating facts that Challender cites in his sentencing position paper, to the extent they are mitigating at all, are substantially outweighed by the aggravating facts of this case, including the seriousness of Challender's offense, his

---

[3] Ironically, Challender argues in his sentencing brief that he should be treated more leniently than this very defendant who Challender managed to outdo on the Quest4More Board through his depravity.

disturbing sexual obsession with extremely young children, and the need to protect the public from this depraved defendant. As a result, the mitigation cited by Challender in his sentencing brief, at best, justifies the 151 month sentence recommended by the government as opposed to the 240 month sentence recommended by the Probation Office.

## II.

## ARGUMENT

A. CHALLENDER'S OBJECTION TO THE APPLICATION OF THE DISTRIBUTION ENHANCEMENT RELIED UPON BY THE PROBATION OFFICE AND THE GOVERNMENT TO CALCULATE HIS SENTENCING GUIDELINE RANGE IS WITHOUT MERIT

Section 2G2.2(b)(3)(B) of the United States Sentencing Guidelines provides that a defendant's base offense level in a child pornography case should be increased by five offense levels if his offense involved the "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain . . ." Both the Sentencing Guidelines themselves, as well as the Ninth Circuit, have made it clear that trading child pornography for other child pornography is "distribution" for a "thing of value" within the meaning of § 2G2.2(b)(3)(B). See Application Note 1 to U.S.S.G. § 2G2.2 (noting that the bartering of child pornography constitutes the "distribution for receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain"); United States v. Phillips, 2009 WL 1185217 *3 (9th Cir. 2009) (holding that trading child pornography for access to other child pornography triggers the enhancement called for under § 2G2.2(b)(3)(B)); United States v. Laney, 189 F.3d 954, 961-61 (9th Cir. 1999) (same). Here, there is no doubt that

Challender's activities on the Quest4More bulletin board involved the bartering of child pornography. The very purpose of this bulletin board was to provide people like Challender with a forum to trade access to child pornography with one another, and the evidence -- including Challender's own admissions during his change of plea -- is overwhelming that Challender distributed child pornography on the Quest4More bulletin board in conjunction with his successful efforts to receive child pornography in return from the other members of the Quest4More Board.[4]

    1.    <u>When Challender Entered His Guilty Plea, He Admitted the Very Conduct That Triggers The Distribution Enhancement Recommended By the Probation Office and the Government</u>

Challender's objection to the application of the distribution enhancement recommended by the Probation Office and the government to his conduct is particularly head-scratching because, when Challender entered his guilty plea, he admitted those facts necessary to establish this enhancement. Specifically, Challender conceded as a part of the factual basis

---

[4] The Sentencing Guidelines provide for a series of different possible enhancements in cases where a defendant was involved in the distribution of child pornography. The minimum enhancement applicable to a defendant engaged in the distribution of child pornography is two levels. <u>See</u> U.S.S.G. § 2G2.2(b)(3)(F). Accordingly, if this Court were to conclude that Challender was engaged in the distribution of child pornography on the Quest4More Board, but was not involved in distribution "for the receipt, or expectation of receipt, of a thing of value" (a conclusion disproven by the facts set forth below), the offense level recommended by the government would only decrease from offense level 37 to offense level 34. This drop in offense level would lower Challender's applicable Sentencing Guideline range from 210 to 262 months to 151 to 188 months, a range that encompasses the government's recommended sentence.

for his guilty plea that: "[D]efendant Challender posted child pornography images and videos on the Quest4More message board during the time period he was a member and, in return, Challender received and possessed child pornography images and videos that were posted by other members of this message board." (See Exhibit A (Challender's Plea Agreement at pp. 20-21)). As these facts Challender admitted to were true, and fully support the imposition of the enhancement called for under U.S.S.G. § 2G2.2(b)(3)(B), this five-level enhancement recommended by the Probation Office and the government should be used to calculate Challender's final adjusted offense level under the Sentencing Guidelines.

    2.   <u>Challender's Posts on the Quest4More Board, and the Responses to His Posts, Confirm that Challender Successfully Distributed Child Pornography, Including Child Pornography Featuring Infants, to the Other Members of the Quest4More Board</u>

In his sentencing position paper, Challender asserts that the Probation Office and government have incorrectly applied the distribution enhancement at issue because (1) his role on the Quest4More Board was purportedly limited to that as an "observer" and "commentator" because he never successfully posted child pornography to the Board (see Challender's Sentencing Position Paper at pp. 7-8, 11); and (2) he did not post any child pornography on the Quest4More Board because "he had no child pornography to share with Quest4More members." (See id. at p. 7). Both of these assertions underlying Challender's argument are flat wrong.

First, it is clear that Challender's representation to this Court that "he had no child pornography to share with Quest4More

members" is inaccurate. As noted in the PSR, Challender was in the possession of a computer on the day he was arrested that contained hundreds of images and hundreds of videos of child pornography. (PSR ¶ 16).

Second, Challender's posts, and the responses from Quest4More members to those posts, confirm that Challender shared child pornography with the members of the Quest4More Board who had shared child pornography with him. Specifically, a review of Challender's posts confirms that he posted links to child pornography on the Quest4More Board, including images of babies, and other members of the Board successfully accessed this child pornography distributed by Challender. By means of example only:

* On May 17, 2008, Challender, utilizing the screen name "hilljoe," posted a message entitled "babies, sweet fuck toys" to the "nepi" fora on Quest4More, which was an area of the Board reserved for the posting of child pornography featuring infants and toddlers. This message included the text "you will be wanking to these," and included a link to child pornography. The following day, defendant Pharis, utilizing the screen name "jaslovesfootball," entered the following post, confirming that he had accessed the link to child pornography posted by Challender: "thanks joe, alittle to young for my taste, but you the man, so how are you, what is going on with hello,[5] so any

---

[5] The government believes that the term "hello" as used in this message refers to Google Hello, an instant messaging service that was specifically designed to allow individuals to share photographs with each other, and a service that individuals like Challender and Pharis exploited to send child pornography to each other. Google ended this service on May 15, 2008, three days prior to this post on Quest4More by Pharis.

ways, where will we meet now, well I will do my best to talk to you tomorrow, have a super day.  hello to every body else." (<u>See</u> Exhibit B);

　　　*　　On December 28, 2007, Challender posted a message entitled "yummy" on the Board.  This message included the text "just a few pics" and a link to child pornography that contained the word "babycrzy" embedded in the link.  Two days after Challender posted this message and link, a Quest4More member known as "DanDLion," acknowledging that he had accessed child pornography from this link posted by Challender, posted a message reading, "thanks, some nice little cunts there."  (<u>See</u> Exhibit C); and

　　　*　　On December 16, 2007, Challender posted a message entitled "hot, realy [sic] hot" on the Quest4More Board.  This message included a link to a child pornography website and a password to that site, as well as a message from Challender in which he reveled in the joy that Quest4More members would have masturbating to the images he was supplying to them through his post.  In response to his post, a Quest4More member known as "testory1128" entered a post that read as follows: "WOW what can I say, just were [sic] do you get these site from . . . well my cock is going to get VERY sore after going through all that lot.  thabks [sic] for that link, you are a top star here." (<u>See</u> Exhibit D).

　　　These posts, as well as others, confirm that Challender, a so-called "top star" on the Quest4More Board, was, in fact, successfully distributing child pornography to other members of the Board.  Other posts, including posts cited by the government

9

in its initial sentencing brief, confirm that Challender received child pornography from others as a member of the Board. Accordingly, in Challender's case, the Quest4More Board operated exactly as it was clearly intended to operate, as a forum where Challender provided members of the Board with some of the child pornography that he had access to, and received samples of the collections of child pornography amassed by other members of the Board in return. Therefore, the five-level enhancement called for under U.S.S.G. § 2G2.2(b)(3)(B) should be imposed in his case.[6]

B. CHALLENDER'S OTHER CRITICISMS CONCERNING THE APPLICATION OF THE SENTENCING GUIDELINES HAVE NO MERIT

In a refrain that is now repeated by almost every defendant in a child pornography prosecution, Challender also asserts that the Sentencing Guidelines utilized in child pornography cases

---

[6] The cases cited by Challender in his sentencing brief should not alter this outcome, as they addressed mechanisms for distributing child pornography much different than the Quest4More bulletin board. For instance, United States v. Bastian, 603 F.3d 460 (8th Cir. 2010), involved a defendant who was using a peer-to-peer file program known as Limewire to download child pornography, a program in which a user may control whether he is giving access to the child pornography on his computer to others on the network and in which an unsophisticated computer user may not be aware of whether or not he is providing such access to others. In such cases, courts have recognized that the enhancement under § 2G2.2(b)(3)(B) may not apply unless the government can establish that the defendant knew that by using a file-sharing network, he could download files from others who could also access his files. Id. at 466. This type of scenario bears no relationship to how the Quest4More bulletin board operated. As the Probation Office correctly notes in its addendum to the Presentence Report, the very function of the board was to provide a forum for the members to trade child pornography with one another. Moreover, as illustrated above, defendant's posts confirm that he was utilizing the Quest4More bulletin board for that very purpose.

10

should be accorded little weight because they were purportedly not the product of careful study by the Sentencing Commission. While some courts have accepted the argument that the Sentencing Guidelines should not be accorded substantial weight in the "mine run" child pornography prosecution, this view is hardly universal, and other courts have provided powerful reasons why district courts should give deference to the Sentencing Guidelines in child pornography cases. See e.g., United States v. Cunningham, 680 F. Supp. 2d 844, 847-53 (N.D. Ohio 2010) (rejecting the argument that the child pornography Sentencing Guidelines are not entitled to deference and noting that the child pornography guidelines have resulted from efforts by the Sentencing Commission to use empirical data and its own expertise to craft appropriate guidelines).

Regardless of what particular weight one attributes to the Sentencing Guidelines in a child pornography case, there is little doubt that child pornography offenses are serious crimes that merit serious punishment. Moreover, given the fact that this case does not represent the "mine run" child pornography case, and the application of the § 3553(a) factors in their totality justify the 151 month sentence recommended by the government, even if this Court were to give little deference to the application of the Sentencing Guidelines to this case, the sentence recommended by the government is still the appropriate sentence.

C.  THE ARGUMENTS CHALLENDER OFFERS TO MITIGATE HIS HORRIFIC CONDUCT AND IN SUPPORT OF LENIENCY AT SENTENCING DO NOT JUSTIFY A SENTENCE NEAR THE MINIMUM SENTENCE HE FACES IN THIS CASE OR, FOR THAT MATTER, ANY SENTENCE OF LESS THAN 151 MONTHS

In his sentencing position paper, Challender offers a series of reasons why he should receive a sentence close to the mandatory-minimum sentence he faces in this case. Specifically, Challender asserts that he is entitled to substantial leniency at sentencing in the form of a sentence less than one-third that recommended by the Probation Office because (1) he had a difficult childhood and may have been the victim of sexual abuse as a child; (2) he has been gainfully employed as an adult and has been actively involved in political causes; (3) he is apologetic for what he has done and a sentence near the minimal term allowed will purportedly serve as "a deterrent and sufficient punishment" for Challender; (4) educational and training opportunities that await him in prison justify a lesser sentence for some unspecified reason; and (5) imposing a 151 month sentence would somehow result in an unfair disparity when compared to the 180 month sentence received by defendant Pharis. To the extent any of this information constitutes mitigating evidence that favor any leniency in this case, it pales in comparison to the aggravating facts of this case and does not justify the imposition of a sentence less than the 151 month sentence recommended by the government, let alone the imposition of a sentence hugging the minimum term Challender must serve as a result of his conviction in this case.

First, Challender's claim that he should receive substantial leniency because he purportedly endured a traumatic childhood is entitled to little, if any, weight. To the extent that this Court can even accept that the incidents Challender cites from

his childhood actually occurred,[7] they occurred more than four decades prior to the conduct at issue in this case. Accordingly, it is difficult to see how this constitutes persuasive evidence to justify lowering Challender's sentence to near the mandatory-minimum term for an offense as serious as Challender's offense.

Second, Challender's claim that he should receive substantial consideration for the fact that he held a job as an adult and has periodically served as a political activist lacks merit as well. The exact accomplishments that Challender cites in this portion of his sentencing position paper were considered by the Probation Office when it made its sentencing recommendation in this case (see PSR at ¶¶ 49-50), and the Probation Office still concluded that Challender should receive the maximum penalty available for his offense of conviction. Moreover, Challender's accomplishments as an adult are far less remarkable than the fact he has, by his own admission, collected child pornography for at least the past eight years and developed a sexual interest in baby boys as an adult in his 50s. (See PSR at ¶ 19).

Third, Challender's self-serving claims that he is

---

[7] For instance, the sensational claim that Challender may have been the victim of sexual abuse as a child is a claim that is supported by little in the way of reliable evidence. No witness, including Challender himself, can supply any detail concerning any occasion when Challender was purportedly the victim of child molestation. Instead, in support of this claim, Challender, and Challender alone, reports that he has a "some vague memory" of a pedophilic uncle who touched him sexually when he was four years old. (Challender's Sentencing Position Paper at p. 13). Indeed, it appears that Challender's sentencing marks the first time this claim has ever come to light.

13

remorseful and now motivated to alter the long-standing behavior that led to his conviction in this case do not merit the substantial variance between the sentence he seeks and that recommended by the Probation Office.  The government does not dispute that in the 17 months since Challender was arrested that he regrets the trouble he is in and, like many defendants, claims that he does not want to repeat his past behaviors.  Unfortunately, these self-serving claims within the first year and one-half of Challender's incarceration are hardly reliable predictors of the future danger Challender poses, particularly given his extensive and long-standing involvement in committing the offenses at issue and the nature of the urges that typically give rise to the types of offenses committed by Challender.

     Moreover, Challender's generic claim that "72 months" constitutes "sufficient punishment" for his offense fails to recognize the seriousness of his offense and those aggravating facts that have caused the Probation Office to recommend that Challender serve a 20 year term of imprisonment. (Challender's Sentencing Position Paper at p. 16).  This perhaps is not surprising given that Challender's sentencing position dramatically understates or misunderstands the role that he played as a member of the Quest4More Board and, at times, makes it sound like Challender's posts on the Board were the equivalent of what one might say to a friend on Facebook. (<u>See</u> Challender's Sentencing Position Paper at p. 12).  A sentence of 70 months or 72 months would, in fact, substantially minimize the seriousness of defendant Challender's conduct, which is well beyond the pale of that at issue in the "mine run" child pornography case.

Fourth, there is no merit to Challender's claim that the mental health counseling that he will receive in prison justifies slashing his sentence to near the minimum term of imprisonment this Court must impose.  A review of the posts that Challender made on the Quest4More bulletin board leaves little doubt that Challender poses a danger to the community and, more particularly, an extreme danger to children.  No psychologist, including the paid expert Challender has enlisted, can assure this Court that any mental health treatment Challender receives while in custody will alleviate that danger and negate the possibility that Challender will someday revert to the habit of viewing extreme forms of child pornography that he has developed over at least the past eight years.  Moreover, even if such an assurance were possible, the punishment Challender merits for the serious offenses he committed in this case justify the sentence recommended by the government.

Lastly, Challender's claim that he is somehow entitled to a sentence only 39% as long as the sentence imposed on defendant Pharis' is legally without basis and factually without support.  Contrary to the central premise underlying Challender's argument in this regard, a sentencing judge is under no obligation to equalize sentences among coconspirators or codefendants.  <u>See</u>, <u>e.g.</u>, <u>United States v. Monroe</u>, 943 F.2d 1007, 1017 (9th Cir. 1991) (rejecting the argument that a district court must provide equalized sentences among codefendants pursuant to the Sentencing Guidelines or 18 U.S.C. § 3553(a)(6); <u>United States v. Endicott</u>, 803 F.2d 506, 510 (9th Cir. 1986) (recognizing that "[i]t is within the discretion of the trial court to impose disparate

sentences upon codefendants" and that a disparity in the sentences imposed upon codefendants does not indicate that the sentencing judge has abused his discretion or that appellate review of that decision is warranted).  This is because 18 U.S.C. § 3553(a)(6), the provision that requires courts to consider "disparities" at sentencing between similarly-situated defendants, was enacted for the purpose of promoting national uniformity at sentencing among equally-situated defendants and not, as Challender pretends in his sentencing position paper, to achieve sentencing parity among codefendants in a particular case.  <u>United States v. Saeteurn</u>, 504 F.3d 1175, 1181 (9th Cir. 2007) (holding that the goal of uniformity set forth in § 3553(a)(6) relates to a nationwide uniformity based upon the sentencing guidelines, not the uniformity of co-defendants in a particular case); <u>see</u> <u>also</u> <u>United States v. Big Leggins</u>, 2009 WL 605185 ** 2 (9th Cir. 2009) (holding that the difference in between the sentences imposed between two codefendants did not make the sentence of the more harshly punished defendant substantively unreasonable).

Moreover, while it is clearly true that Pharis has a criminal history that Challender lacks, it is not true that Challender should be the beneficiary of a sentence substantially lower than that imposed on Pharis, as Challender's activities on the Quest4More Board were equally as vile as Pharis' activities,[8]

---

[8] In Challender's case the government also seized a computer that contained hundreds of images and videos containing extreme forms of child pornography.  While the government seized some computer media in Pharis' case, this evidence was suppressed and, before its suppression, Pharis indicated that the government

16

Challender's sexual obsession with toddlers and babies is far more aggravating than any of Pharis' deviant interests, and Challender's eight-year involvement in committing child pornography offenses similarly indicates long-term involvement in the sexual exploitation of children.  Accordingly, even if this Court were required to account for a disparity in the sentences of Challender and Pharis – which it is not -- the disparity of 29 months recommended by the government here is justified, while the disparity of 110 months recommended by Challender is not.

## III.
## CONCLUSION

For each of the foregoing reasons, the government maintains its recommendation that defendant Challender be sentenced to 151 months imprisonment to be followed by a lifetime period of supervised release.

DATED:   March 7, 2011

                        Respectfully submitted,

                         /s/
                        ROBERT E. DUGDALE
                        Assistant United States Attorney
                        Chief, Criminal Division

                        Attorneys for Plaintiff
                        UNITED STATES OF AMERICA

---

would not find any child pornography on it in any event.